[Opinion delivered March 13, 1886.]

---

[No. 2028.]

### S. C. Masterson v. The State.

1. Pleading — Practice — Indictment.— The prosecution cannot be required to elect between two or more counts in an indictment when the joinder is simply designed and calculated to adapt the pleadings to different aspects in which the evidence on the trial may present a single transaction. Election is required only in those cases where an attempt is manifested, either by the indictment or the evidence, to convict the accused of two or more distinct offenses growing out of distinct or separate transactions. As tle theft, and the theft from the person, charged in the indictment in this case refer to the same transaction, the case is not brought within the exception, and the trial court did not err in refusing to require the State to elect between the counts.

2. Practice — Evidence.— Failing to except to inadmissible testimony at the time it was tendered, the accused cannot be heard to complain of it for the first time in this court. See the opinion in illustration.

3. Theft from the Person — Fact Case.— See the statement of the case for evidence *held* sufficient to support a conviction for theft from the person.

Appeal from the District Court of Bell. Tried below before the Hon. W. A. Blackburn.

The conviction in this case was for the theft of $44 in money from the person of J. C. Roberson, in Bell county, Texas, on the 18th day of November, 1885. A term of five years in the penitentiary was the penalty imposed upon the appellant.

J. C. Roberson was the first witness for the State. He testified that he knew the defendant, and knew that the defendant got his money. The theft of the money from the witness occurred in November, 1885, in Belton, Bell county, Texas. Witness first saw the defendant in a barber shop in Belton. The witness, Carroll, Light and the defendant went to the Santa Fe Railroad depot and camped for the night. The witness went to sleep before the camp fire without pulling off his clothes. The witness had, in a pocket-book on his person, three ten-dollar and one five-dollar bills, and silver change in half-dollar pieces for a ten-dollar bill, except $1, which he had spent, being eighteen half-dollar silver pieces; in the aggregate $44. On awakening just before day, the witness felt for his money and found that it was gone. He then aroused Light and told him that his money had been stolen. Two trips to town and back over the route passed over on the night before were made by two of the boys, but the money was not found. After these trips and searches, witness called Light off and told him that he had found his pocket-book about ten steps from camp. Light then proposed that all parties present should be searched. Defendant refused at first to submit to a search, but finally said that he would submit to a search except in his shoes, where he kept his money. A fruitless search of the party having been made, the defendant stepped off a short distance, sat down, pulled off his shoes himself, produced and showed the witness three ten-dollar bills and a five-dollar bill. Of the three ten-dollar bills lost by witness, one was a Little Rock National Bank bill. That bill the witness identified among the three ten-dollar bills defendant took from his shoes and exhibited. Witness asked the defendant where the silver was. Defendant had the eighteen silver dollars and thirty cents more in his vest pocket. Witness then went after Fulwiler, the sheriff. Fulwiler returned to the camp with witness, and they found defendant in the post oaks, where Fulwiler arrested him. After his arrest, the defendant was taken to the railroad and searched, and the eighteen silver half-dollars were found on him. Fulwiler then got the three ten and the five-dollar bill from Carroll, who had taken them from the defendant. The money described belonged to the witness, and was taken from him without his knowledge or consent. Witness put it in his pocket when he went to sleep, and did not know when it was taken. Witness got his money back about three weeks later.

Cross-examined, the witness testified that Light, Carroll and the defendant were with him when the money was taken. Light and Carroll had been with the witness during the day. Defendant joined the party that night, and told Light that he was going home with him. Light, Carroll and the witness had taken quite a number of drinks during the day, but were not drunk. Witness and Carroll were together after corn on that day, but witness could not remember whether or not he took a bottle of whisky with him. On the way to the depot the hind gate of the wagon was lost. The witness last counted his money in town late that evening, and just before going into camp. The witness knew the Little Rock National Bank bill, but could not identify either of the other bills. Witness knew the money to be his because the amount corresponded with the amount he lost. Witness did not know whether or not the defendant had any money, other than that he took from witness, when the theft was committed. Witness saw no more of his money after counting it just before going to camp, until he saw it in defendant's possession. Witness slept on the ground that night, and when he went to sleep had the money in his pocket-book, and his pocket-book in his pocket. The pocket-book could not have gotten out of witness's pocket except by some one's agency.

John Carroll testified, for the State, that he, J. C. Roberson, Light, and defendant left Belton on the night of the alleged theft, and camped near the Sante Fe railroad depot. On the next morning, after he announced the loss of his money, Roberson described one of the bills. After the pocket-book was found, witness remarked: "Boys, one of us has got his money, and we must stand a search." All parties agreed to be searched except the defendant. After refusing to be searched, the defendant said that he carried his money in his shoes. He thereupon sat down, pulled off his shoes, took out some money, counted it and showed it. Roberson claimed the money and took it, but the defendant demanded its return, and Light told him to give it up, which he did. The sheriff came and arrested defendant, and upon searching him found on his person $44.30.

Cross-examined, the witness said that he and Light had been together all day, and got with Roberson about 9 o'clock. Defendant claimed the money found on his person as money he had earned picking cotton.

Rufe Light was the next witness for the State. He testified that he had known the defendant since 1883. Witness knew, on the night of the alleged theft, that Roberson had $25. Some time before day Roberson said that he had lost his money,—$35 in currency

and some silver.   The witness then proposed that each member of the party present be searched.   Thereupon the defendant replied that he had some money for which he had labored hard, and would not give it up.

Cross-examined, the witness stated that the crowd had been drinking in the saloons during the day, and when they started to camp had arrived at a point "pretty tolerable near drunk."   Defendant did not run off when Roberson said that he was going after the sheriff.   He did not run into the bushes, nor did he make any resistance to the sheriff.   Witness and defendant went out to attend a call of nature, when Roberson claimed and took the money from defendant.   Witness made him give it back, telling him that his remedy was by arrest for robbery.   "Masterson took several drinks with us that day, and when we went to bed that night we all slept like horses."

R. W. Fulwiler testified, for the State, that Roberson requested him to arrest defendant.   When he went to make the arrest, defendant ran into a thicket.   The arrest being made, witness searched defendant and found on his person three ten and one five dollar United States currency bills, and eighteen silver half-dollars.   Witness placed that money in bank, and some days later defendant told witness to deliver it to Roberson, reserving thirty cents; which witness did.   Defendant made no actual resistance to arrest.   The witness, however, had to draw his pistol to induce him to leave the thicket and surrender.

The motion for new trial raised the questions discussed in the opinion.

*W. K. Saunders*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.   There were two counts in the indictment, one for theft and one for theft from the person.   Appellant was found guilty of theft from the person, and given five years in the penitentiary by way of punishment.

It was not error to refuse to require the district attorney to elect upon which count he would try the defendant.   It is only required that an election be had in those cases "where an attempt is made, as manifested either by the indictment or the evidence, to convict the accused of two or more distinct offenses growing out of distinct or separate transactions; but should never interpose in either mode

where the joinder is simply designed and calculated to adapt the pleadings to different aspects in which the evidence on the trial may present a single transaction." (*Keeler* v. *The State*, 15 Texas Ct. App., 111; *Gonzales* v. *The State*, 5 Texas Ct. App., 584.) There may be exceptions to this rule (*Simms* v. *The State*, 10 Texas Ct. App., 131), but the case here presented does not come within the exceptions.

It is claimed that the court erred in allowing the witness Fulwiler to testify that, after defendant was arrested by him, defendant told said witness " to give the money to J. C. Roberson." Objection is that defendant was under arrest at the time, and had not been cautioned. This would perhaps have been a good objection to the testimony when offered on the trial. It is, however, expressly stated in the certified and agreed statement of facts that, when this evidence was offered and adduced, no objection was made to it by defendant. He cannot be heard to complain now, after sitting quietly by and permitting inadmissible evidence against him without objection.

As to the evidence, in our opinion it amply sustains the verdict and judgment. No objection is urged to the charge of the court, nor is any material one perceived. No additional instructions were asked for defendant. There is no error apparent for which a reversal should be had, and the judgment is affirmed.

*Affirmed.*